Good morning, Your Honor. It's my pleasure to court Kristi Sciutto for the petitioner, Jhonnalyn Pascua. I'd like to focus on the issue of whether a petitioner is statutorily eligible for an adjustment of status with a 212C waiver in deportation proceedings. I'll refer to this relief from deportation as Gabrielski relief. Our position is that the BIA specifically addressed the issue twice, first in its March 20, 2008, decision that erroneously agreed with the IJ, stating that petitioner's 2005 convictions could not be cured after the repeal of section 212C by IRA-IRA and ADEPA. I understand to some extent, and maybe I should probably ask the government, but the government seems to agree that a remand for Gabrielski consideration would be appropriate. Is that your understanding? Yes, but my understanding is that they want to leave open the issue of eligibility. Okay. And our position is that the BIA addressed eligibility and they erred on the decision. All right. So that's your arguing on that aspect. Okay. So that's our argument. So in the initial BIA decision, they said You're arguing for the 2nd and 6th Circuit's rule. Is that correct? Exactly. Exactly. In Garcia-Padron and I forget the 5th Circuit case was Enrique Gutierrez V. Holder. Those are both recent cases. The 5th Circuit. I didn't mean 6th Circuit. Yes. And then also we're arguing that the rationale in the 2nd BIA decision where they applied the comparable grounds issue to this case in a BD, well not a BD, but the same issue they cited in the two other cases, the predecessor to a BD. We're arguing that those don't apply to Gabrielski relief. Once there's an adjustment of status application, the issue switches to one of admissibility or inadmissibility and we can use the Section 212C waiver for drug offenses here. The BIA's conclusion that portability for firearms offense makes petitioner such totally ineligible for relief clearly contradicts the pre-published agency decisions I cited in Matter of Vazarin, Matter of Gabrielski and Matter of Rainford, as well as Drax v. Lino out of the 2nd Circuit. And then as the court noted, BIA's statement that Section 309C of IRA-IRA preserved Section 212C for people in deportation proceedings has now been supported by the two decisions out of this court's sister circuits. Just several more general points I'd like to make this morning. First, I'll note how important this case is to Ms. Pascua and her family. We know that. We've read your briefs. We do understand. We understand the legal issues here, so maybe we should hear from the government. May it please the Court, Rebecca Hoffberg, on behalf of the United States Attorney General. Petitioner on two different occasions... Before you get there, what's your position on the Gabrielski remand? Well, as you pointed out, we are requesting remand because the problem is in this case... But you agree that at least as to the reconciliation of the two statutes or whatever, he can get that much. Your disagreement, as he said, as counsel said, is what's the scope of the remand beyond that? Well, we would like this court to avoid ruling on basically any of the issues before giving the Board a chance to rule on all of the issues. And there's a number of reasons for that. First of all, it may seem as though the Board has had numerous chances to get this right, so to speak. The problem is that at every stage of the game in this case, the circumstances were changing. And that's something to really keep in mind. Because the first time that this case was before the agency, it was right after the AEDPA and ARERA laws changed the scope of the immigration law. And so they were first getting used to what the changes mean, what are the implications of those changes. And so the fact is, the first time around, they didn't think that 212C survived at all. And then on remand at that point from the District Court, they believed that 212C was available after determining that it did survive AEDPA and ARERA for people who had previously been in deportation proceedings. However, the problem is, is that after that point, the petitioner in this case had another set of convictions. And that changed factually the situation. Initially, they said, we believe that she's prima facie eligible for 212C for her 1995 convictions. She had a parallel set of convictions in 2005. And that factually changed things. And the agency, I think, it's not clear in the case law how that change in facts affects the legal landscape. And in this case, I'd like to point out that first of all, the Garcia-Padron and the Gutierrez case, if you look at those actual decisions, they're factually distinguishable from this case. First of all, Garcia-Padron didn't address Gabrielski at all. And whether Gabrielski survives the change in the law, we know from Azuran that it survives to the extent that St. Cyr found that, you know, for people who had convictions that predate the ARERA and AEDPA regime, that Gabrielski relief is still available. It's not clear that Gabrielski relief, even if 212C does apply to these 2005 convictions, it's not clear whether Gabrielski is still available. Gabrielski is entirely a board-made form of relief. The board created Gabrielski, a combination of getting a waiver and adjustment of status together. There's nothing in the statute or regulations that creates Gabrielski relief. That is entirely board-made. Because it is entirely board-made, it should be up to the board whether or not that form of relief has survived these changes in the immigration law. Also, the board needs to decide in the first instance the effect of the regulation 1212.3 and 309C. These are both an immigration law and an immigration regulation. So the board, unlike general criminal provisions, the board would have the expertise in interpreting the interplay between the immigration statute and an immigration regulation. That gets to what I, the point I was trying to make or question about in the last case. As I read it, ABB says relief's not available under the statute. And what I regard as dicta because I think in ABB only the statute was challenged, not the regulation. Judge Kaczynski wrote INS can still have its regulation, the one you just referred to. Is the regulation still on the books? Well, the, I mean if you look at the regulation, it's just the Second Circuit took the regulation. Is the regulation still on the books? 1212.3? Yes. Yes. So the agency still has that authority. And I didn't understand in this case you were, that either party was challenging the vitality, the availability of the discretion afforded by the regulation. Do you? Well, I think what we're disagreeing on is maybe how the regulation in 309C, 309C is what Garcia, Padron, and Gutierrez used to find that that is what applies. Whereas the regulation is, was created because of St. Cyr. And of course this is the opposite of St. Cyr. St. Cyr was where the convictions occurred before the AEDPA and ARERA, but the removal proceedings commenced after them. Whereas in this case you have deportation proceedings commenced before AEDPA and ARERA and the convictions, the 2005 convictions occurred after that regime. So it's a little bit confusing in terms of what apply, what law applies based on these 2005 convictions. The, and I was at this point not trying to get an interpretation or regulation, but just it's, it's there and you don't claim that a BB knocked it out and then you would like the BIA to have the opportunity in the first instance to see whether the petitioner is eligible for relief under the regulation and if he's eligible whether it's appropriate. Yeah, I mean we would like for the board, first of all, there's a lot of confusion I think in 212C cases. I think the point is to avoid inconsistency. Okay, this is not, okay. And I think we want the board to clarify this once and for all, how 212C applies in a situation like this where you have convictions that occurred so far after the new regime and yet they are still in deportation proceedings and how that affects. I mean one thing to keep in mind is that even in- It doesn't, I may really be confused, you know this, but- It's very confusing. No, no, no, but no. Doesn't a BB say that 212C doesn't apply in this case? The regulation may apply, but the statute doesn't? Oh, well, the BB addressed more of the statutory counterpart issue about whether, I mean we're not disputing that in this case in terms of, I mean I don't consider this in a BB issue because the government, I mean, and actually if you look at Garcia-Pedron, it relies on an unpublished Sixth Circuit case, Beltran, in which actually the issue, it's really materially distinguishable because in Garcia-Pedron, first of all, they were not considering a Gabrielski form of relief. They were only considering whether 212C remained available and they were only looking at unpublished decisions, unpublished board and unpublished Sixth Circuit decisions to come up with a conclusion that they did, that it's 309C that allows the 212C relief to remain available. However, you know, that case is, because even if 212C remains available, like we said, we don't know if Gabrielski relief remains available. And in Gutierrez, actually, the court actually said, we're not going to make any finding about his eligibility for adjustment. And this is actually a very distinguishable case because this had to do with whether or not he stipulated that 212C did not apply to his 2001 conviction. So it was similar in the sense that he had convictions that were earlier that predated the new laws and then he had a post, and then postdated one. And that had to do with whether he stipulated that his 212C waiver didn't apply. And what's interesting is that 212C may very well be more offense specific, which is something else that the board could address. I mean, we know that there were no new charges of deportability in this case because the petitioner happened to commit the exact same type of offenses on both occasions. In both 1995 and 2005, she has a firearms offense and a drug offense. And so there was actually, in this case, there happened to not need to be a new ground of deportability. And what happens with 212C is generally you apply for it for a particular offense. And so what we would like to do is have the board clarify how do you apply for 212C for a different set of convictions. Maybe you still get it if the ground of deportability is the same, but it's actually a new offense. And so that's one thing that the board could do. Another thing that the board could do, and this is very important because these are, as I mentioned, immigration statute and immigration regulations. And you can see in the 5th Circuit decision that they specifically chose not to rule on the adjustment situation. And that would be something for the board to decide in the first instance. I mean, either way in this case, if you were to decide, let's say that 212C was available, you'd still have to remand this case for the board to consider the adjustment and consider whether the petitioner deserves 212C in the exercise of discretion. Either way, this case has got to be remanded. And so what we're asking is that you remand it for all issues because that way the board can come up with hopefully this time, after having had some time to see how the case law has evolved, how other circuits have addressed this issue, at this point in time, enough time has passed from the AEDPA and ARERA laws that the board could make, hopefully once and for all, an informed decision and provide some consistency throughout the different circuits. Promises, promises. Well, I really, I think the board deserves a chance because, as I mentioned, at the time the board made the decisions in this case, there were just different facts, different law, and I think that now it's just, it's hopefully should be a clearer situation and the board can and should make this decision before this court does. And you're saying that that's what the BIA will do in this case? Well, that's... We've remanded to the BIA occasionally and the cases sort of float away and I'm just kicking the can down the road. It sounds like they really want this case. Well, you can see that we've tried multiple... I mean, we filed a motion to reconsider this remand. You know, we have been trying to remand this case from the beginning. This is the position we've taken from the beginning. Okay. I'm not quarreling with your good faith. I'm just questioning whether you have the authority to guarantee that the BIA will actually do what you're suggesting they would like to do. I mean, you're correct, Your Honor, in that, you know, I work for a different agency. However, you know, we have been trying to remand, so... Fair enough. And, you know, unless the court has any further questions, you know, we would appreciate allowing the agency to decide. We got that. Okay. Thank you. Your Honor, our concern is that if the court remands the BIA without explaining why their decisions are wrong, they're just going to issue a third decision, coming up with some other reason to deny the applications. In my experience, that's been the case whenever... my case is whenever the respondents ask for remand. Right. Now, we understand that. So what do you think we should do? I mean, in other words, tell us exactly what's wrong with the government's suggestion, which is like an open remand on Gabrielski, right? The thing that's wrong with it is that the board has specifically addressed the issue that the government's asking them to address in its two most recent decisions. I'll point that out on the record. Page 19 was the first time, and that's at the top of the first full paragraph. Page 19 of what? Of the administrative record. Oh. It's the second page of the board's March 20, 2008 decision, and they stated, we agree with the immigration judge's decision... Wait a minute. Second page? Go ahead. Second page. First full paragraph. We agree with the immigration judge's decision pre-permitting the respondent's application for a waiver under former Section 212C of the Act, an adjustment of status under Section 245 of the Act. Specifically, we find that even if the respondent was granted relief on the basis of her 1995 convictions, she would remain deportable... But it did all this without really considering Gabrielski, right? Well, no, because Gabrielski is exactly that, an adjustment of status in conjunction with her... It doesn't cite Gabrielski. It doesn't discuss it. It doesn't know it's there, although it's the board's case. What the board's saying in this decision is that 212C, which you need for Gabrielski, doesn't apply to this case because of the date of the 2005 convictions, which occurred after the repeal of former Section 212C. That's exactly the issue, and they addressed it, and our position is they got it wrong, and that should be apparent from Garcia-Pedrón, the holder, and we would submit the facts that Garcia-Pedrón are very similar to this case, and that that's a well-reasoned decision. And they explain how Section 309C1 of IHRA-IHRA preserved Section 212C for people who are in deportation proceedings that were commenced before the repeal of the old law. Okay. And then again, the board addressed the issue in its second decision, specifically addressed the issue, even though it's in a footnote, and it basically said what Garcia-Pedrón... But where is this? This is page 3 of the U.S. Federal Record. It's at the bottom. This is on the reconsideration? Yes. Go ahead. And it says, hence, this is exactly what Garcia-Pedrón, the holder, held, and what we agree with the board here, hence, under Section 309C of IHRA-IHRA, the respondent who is not eligible to seek cancellation of removal because she is in deportation proceedings would technically be eligible to seek Section 212C relief as to deportability stemming from both pre and post ADEPA and IHRA-IHRA convictions. And they explain how Section 309C of IHRA-IHRA specifically makes the repeal of pre-IHRA-IHRA deportation laws, including Section 212C, inapplicable to those aliens in deportation proceedings. So the board's addressed the issue twice. And the error in the second decision is where they go on and hold that, or find that Comorenco v. INS and matter of Esposito apply to this case. They don't. This is a separate line of cases. We're not dealing with the comparable grounds issue, because once there's an adjustment of status application filed, it shifts over to admissibility, and you can use 212C to cure admissibility. Okay. Do you have an argument you would make to the BIA if we remand it without restriction? That, you know, now you've argued they've decided it twice, and you seem to be saying it would be futile to ask them to decide it again. But the government seems to think that it wouldn't be futile. If you get sent back there, do you feel you have some potentially winning argument? Well, I would make the same argument I'm making today, but I don't think they should get a third chance after they've erred twice. Well, it might give you two more bites at the apple. Okay. Thank you, counsel. We appreciate the argument. Thank you, Your Honor. The case is submitted, and we will stand in recess for at least 10 minutes.
judges: Wolf, Tashima, Fisher